**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

May 2, 2018

**BY ECF AND EMAIL**

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

Re:     *United States v. Gjon Saljanin*, S2 16 Cr. 420 **(KMK)**

Dear Judge Karas:

The Government respectfully submits this letter in advance of the sentencing of the defendant, Gjon Saljanin.  As set forth in the parties' plea agreement and the Presentence Investigation Report ("PSR"), the Guidelines range is 30 to 37 months' imprisonment.  The Probation Office recommends a sentence of 24 months' imprisonment, while the defendant requests an unspecified "non-incarceratory sentence."   For the reasons set forth below, a sentence within the Guidelines range would be fair and appropriate.

A.     **Background**

   1.     **The Offense**

On January 15, 2014, defendant Gjon Saljanin and a co-defendant, Anton Saljanin, stole a shipment of 1,195 computers that Anton Saljanin was hired to deliver from Massachusetts to New Jersey.  (PSR ¶¶ 14, 16-17).  Throughout the course of the day, multiple phone calls were made between Anton Saljanin and another co-defendant, Ujka Vulaj, and between Gjon Saljanin and Vulaj.  (PSR ¶ 17).  Late that night, Anton Saljanin and Gjon Saljanin unloaded and stored the stolen computers at Vulaj's residence in Yorktown Heights, New York.  (*Id.*).  Anton Saljanin and Gjon Saljanin then drove the truck to a parking lot in Yorktown Heights, and soon thereafter drove the truck to a different parking lot in Danbury, Connecticut.  (PSR ¶ 18).

The next day, January 16, 2014, Anton Saljanin falsely reported to the Yorktown Police Department that the truck was missing from the Yorktown Heights parking lot.  (PSR ¶ 19).  During the investigation by the Yorktown Police Department, Anton Saljanin and Gjon Saljanin both falsely claimed that on January 15, they had driven the truck directly from Massachusetts to the parking lot in Yorktown Heights and had left it parked there overnight.  (*Id.*).  They did not mention that they had first stopped at Vulaj's residence to unload the computers, or that the truck had been moved that night to the Danbury, Connecticut parking lot.

Vulaj, another co-defendant, Carlos Caceres, and other individuals sold the computers from the stolen shipment.  Vulaj sold some of the computers to Caceres, who in turn sold those computers to other individuals.  Vulaj sold the rest of the computers on his own and through other individuals.  (PSR ¶ 21).

Each computer had a retail value of approximately $1,000 and a wholesale value of $827.97, and as a result Gjon Saljanin is responsible for $989,424.15 in losses.  (PSR ¶ 22).

Superseding Indictment S2 16 Cr. 420 (KMK) (the "Indictment") was filed on September 28, 2016, in four counts.  (PSR ¶ 1).  Count One charged Saljanin with a conspiracy, in violation of 18 U.S.C. § 371, to commit theft from an interstate shipment, interstate transportation of stolen property, and receipt, possession, and sale of stolen property, in violation of 18 U.S.C. §§ 659, 2314, and 2315.  (PSR ¶ 2).  Count Two charged Saljanin with theft from an interstate shipment, in violation of 18 U.S.C. §§ 659 and 2.  (PSR ¶ 3).  Count Three charged Saljanin with interstate transportation of stolen property, in violation of 18 U.S.C. §§ 2314 and 2 (PSR ¶ 4).  Count Four charged Saljanin with receipt, possession, and sale of stolen property, in violation of 18 U.S.C. §§ 2315 and 2.  (PSR ¶ 5).

On October 16, 2017, Saljanin pleaded guilty, pursuant to a plea agreement, to Count One of the Indictment.  (PSR ¶ 7).

### 2.      The Presentence Investigation Report and Recommended Sentence

In its Presentence Report, the Probation Office calculated Saljanin's adjusted offense level under the United States Sentencing Guidelines as 19, based on:

- a base offense level of 6;
- a 14-level enhancement for the loss amount involved;
- a 2-level enhancement because the offense involved an organized scheme to steal or to receive stolen goods that were part of a cargo shipment;
- a 2-level reduction because the defendant was a minor participant in the criminal activity;
- a 2-level enhancement because the defendant willfully obstructed, impeded, or attempted to obstruct or impede the administration of justice; and
- a 3-level adjustment for acceptance of responsibility.

(PSR ¶¶ 31-41).

The Probation Office found that Saljanin has 0 criminal history points, and is therefore in criminal history category I.  (PSR ¶ 44).  Based on an offense level of 19 and a criminal history category of I, the Guidelines range for Saljanin is 30 to 37 months' imprisonment.  (PSR ¶ 74).  This calculation is consistent with the parties' plea agreement.  (PSR ¶ 7).

The Probation Office recommends a sentence of 24 months' imprisonment, to be followed by a term of 3 years of supervised release.  (PSR at 18).

In the parties' plea agreement, Saljanin agreed to make restitution in the amount of $989,424.15.  (PSR ¶ 7(o)).  The Probation Office recommends that restitution in that amount be ordered to compensate the victim.  (PSR at 22).

Finally, in the plea agreement, Saljanin admitted the forfeiture allegations with respect to Count One of the Indictment, agreed to forfeit a sum of money equal to $989,424.15 in United States currency, and consented to the entry of the Consent Order of Forfeiture annexed as Exhibit A to the plea agreement.  (PSR ¶ 7(n)).  The Probation Office recommends that a forfeiture order be entered.  (PSR at 22).

**B.    Discussion**

**1.    Applicable Law**

The Guidelines are no longer mandatory, but they still provide important guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005).  "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark."  *Gall v. United States*, 552 U.S. 38, 49 (2007).  The Guidelines range is thus "the lodestar" that "'anchor[s]'" the district court's discretion. *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345-46 (2016) (quoting *Peugh v. United States*, 133 S. Ct. 2072, 2087 (2013)).

After making the initial Guidelines calculation, a sentencing judge must consider the factors outlined in Title 18, United States Code, Section 3553(a), and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing outlined in 18 U.S.C. § 3553(a)(2).  To the extent a district court imposes a sentence outside the range recommended by the Guidelines, it must "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'"  *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (quoting *Gall*, 552 U.S. at 50).

**2.    A Guidelines Sentence Is Reasonable in this Case**

A sentence within the Guidelines range of 30 to 37 months' imprisonment is sufficient, but not greater than necessary, to comply with the purposes of sentencing.  The Section 3553(a) factors most applicable in this case include the nature, circumstances, and seriousness of the offense of conviction, the need to provide just punishment, the need to promote respect for the law, the need to afford adequate deterrence to criminal conduct, and the nature and characteristics of the defendant.  None of these factors militates for Saljanin receiving a below-Guidelines sentence, much less the non-incarceratory sentence he seeks.

*First*, the nature, circumstances, and seriousness of the offense—the interstate theft and sale of nearly 1,200 computers—and the need for just punishment warrant a sentence within the Guidelines range.  Here, the magnitude of the criminal scheme and Saljanin's role in it were significant.  Saljanin directly participated with Anton Saljanin in stealing the shipment of computers, transporting them across state lines, and storing the stolen goods at Vulaj's residence—all critical steps in the scheme to profit by stealing goods from an interstate shipment.  And Saljanin's role did not involve just a handful of the stolen computers, or even a

few dozen of them.  Rather, he participated in the theft of the entire shipment of nearly 1,200 stolen computers, which had a wholesale value of nearly one million dollars.

The seriousness of the crime is further reflected in the devastating impact to the victim. As a result of the defendant's crime, the company has incurred legal fees and a hike in insurance premiums, experienced difficulty in obtaining bank financing, suffered from reputational harms. Furthermore, the company was forced to lay off four employees.  (PSR ¶ 26).  Thus, the seriousness of the crime gives rise to the need for just punishment.

Saljanin claims that he did not personally profit from the scheme and that he "did not engage in the disposition of the stolen laptops."  (Def. Submission 4).  The latter claim is flatly contradicted by the record.  Saljanin and his brother drove the shipment they stole to Vulaj's residence and unloaded the computers there.  (PSR ¶ 17).  Thus, Saljanin indeed disposed of the computers by delivering them directly to Vulaj, who went on to sell the computers to others.  In any event, the Guidelines range already accounts for Saljanin's relative role in the conspiracy, as the parties agreed that a 2-level mitigating role reduction was warranted.

Saljanin's obstructive of justice also counsels in favor of a Guidelines sentence.  After his brother falsely reported to the Yorktown Police Department that the truck was missing from the Yorktown Heights parking lot, Saljanin lied to the police in the course of its investigation. Saljanin falsely claimed that he and his brother had driven the truck directly from Massachusetts to the parking lot in Yorktown Heights and had left it parked there overnight.  A defendant who commits a crime and then lies to law enforcement "in an unlawful attempt to avoid responsibility," as the defendant did here, "is more threatening to society and less deserving of leniency."  *Cf. United States v. Dunnigan*, 507 U.S. 87, 97 (1993) (recognizing that "a defendant who commits a crime and then perjures [him]self in an unlawful attempt to avoid responsibility is more threatening to society and less deserving of leniency").

Despite Saljanin's obstructive conduct, the Government stipulated in the parties' plea agreement that Saljanin should receive a 3-level reduction for acceptance of responsibility—even though defendants who obstruct justice ordinarily are not entitled to the adjustment.  *See* U.S.S.G. § 3E1.1 cmt. n.4.  The Government stands by the plea agreement.  But it bears noting that the acceptance-of-responsibility adjustment and the mitigating role adjustment reduced the offense level from 24 to 19, which in turn reduced the applicable Guidelines range from 51 to 63 months' imprisonment to 30 to 37 months' imprisonment.  A further downward variance is not warranted.

*Second*, the need for the sentence to promote respect for the law and to afford adequate deterrence further supports imposition of a sentence within the Guidelines range.  As the Second Circuit has explained, 18 U.S.C. § 2315, one of the statutes that Saljanin conspired to violate, "seeks to eradicate the interstate and international traffic in stolen goods and in doing so to protect and encourage legitimate trade."  *United States v. Trupin*, 117 F.3d 678, 684 (2d Cir. 1997); *see also id.* at 689 (opinion of Lumbard, J.) (dissenting in part on other grounds but agreeing that Section 2315 seeks to eliminate "the demand side of the market in stolen goods").  Indeed, in enacting Section 2315, Congress specifically sought to compensate for the fact that state and local authorities were less likely to punish the crime.  *See id.* at 684 (explaining that "the possession of goods that had crossed state lines after having been stolen could not be

effectively prosecuted by local authorities who did not have access to the original complainant or national subpoena power, much less a strong interest in prosecuting a local recipient of property stolen in another jurisdiction"). A Guidelines sentence in this case would reflect Congress' intent that those who steal interstate shipments, transport stolen goods across state lines, and sell stolen property be held fully accountable for their crimes. Such a sentence would also better deter others from stealing, receiving, and selling stolen goods, thereby reducing demand in the market for stolen goods, and send an important message promoting respect for the law.

On the other hand, the non-incarceratory sentence requested by Saljanin would diminish respect for the law and undermine general deterrence, as it would be seen as a slap on the wrist for a defendant involved in a scheme to steal and sell a huge shipment of cargo in interstate commerce. Such a sentence would be particularly problematic here because the diminished respect for the law would contribute to the very problems—under-enforcement of property crimes and growth in the market for stolen goods—that Congress sought to remedy.

*Third*, the history and characteristics of the defendant also support a Guidelines sentence. Saljanin cannot excuse the instant offense as a youthful indiscretion. At the time of the offense in 2014, Saljanin was a 38 year-old man with three children who should have known better than to commit this crime. (PSR ¶ 53). Nor can Saljanin excuse the instant offense as an act of financial desperation. Far from being, say, a penniless drug addict desperate to provide food and shelter for his family, Saljanin and his wife had stable employment generating steady incomes, and they had a substantial net worth. (*See* PSR ¶¶ 68-71). These circumstances make Saljanin more culpable for his crime, further supporting imposition of a Guidelines sentence.

Saljanin personally notes in his own letter to the Court that as a result of the pending case, he has lost his job and used some of his savings, and incarceration will make things harder for his family. While the challenges his family might face as a result of his incarceration are regrettable, they do not warrant a variance in this case. *See, e.g.*, *United States v. Mavashev*, 455 F. App'x 107, 115 (2d Cir. 2012) ("[T]he emotional and financial hardship suffered by [the defendant's] family are no different than those suffered by the families of any incarcerated defendant who has children . . . ."); *United States v. Cutler*, 520 F.3d 136, 165 (2d Cir. 2008) ("[The defendant's] wife and children will no doubt face hardship, but this is true whenever family members are deprived of the company and/or support of a defendant who is incarcerated.").

**C.      Conclusion**

For the reasons set forth above, a sentence within the Guidelines range of 30 to 37 months' imprisonment would be sufficient, but not greater than necessary, to comply with the purposes of sentencing.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By:      /s/ Won S. Shin
         Won S. Shin
         Assistant United States Attorney
         (212) 637-2226

Enclosures

cc:      Bruce D. Koffsky, Esq.